CAROLINA TELEPHONE AND TELEGRAPH COMPANY v. ROSA D. McLEOD

No. 310PA87

(Filed 3 February 1988)

**Telecommunications § 3; Eminent Domain § 3— private condemnation—telephone line for single customer—public use or benefit**

> The trial court erred in a private condemnation action by granting defendant's motion for summary judgment and denying plaintiff's motion for summary judgment on the grounds that plaintiff's desired use of the land in question is not for the use and benefit of the public where the condemnation was for the purpose of providing telephone service to a single customer. Under the public use test, it is the public's right to use rather than the actual use which is significant; here, every member of the public will have a common and identical right to use the telephone line. The public benefit test is satisfied in that provision of telephone service to a single customer to insure that an entire community is interconnected is a necessity required by the public and which cannot readily be provided without some government aid. N.C.G.S. § 40A-3.

ON plaintiff's petition for discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous and unpublished decision of the Court of Appeals, 85 N.C. App. 538, 355 S.E. 2d 858 (1987), affirming orders entered by *Barnette, J.,* at the 9 September 1986 Civil Session of Superior Court, HARNETT County, granting defendant's motion, and denying plaintiff's motion, for summary judgment. Heard in the Supreme Court 12 November 1987.

*Donald E. Harrop, Jr., for plaintiff-appellant.*

*Bryan, Jones, Johnson & Snow, by James M. Johnson, for defendant-appellee.*

MEYER, Justice.

This is an action instituted by plaintiff pursuant to N.C.G.S. § 40A-19, our statutory provision for private condemnation of privately owned real property. Specifically, plaintiff seeks by its action an easement over defendant's land to enable it to provide telephone service to Mr. Dennis P. Turlington, one of its custom-

ers. The issue presented on this appeal is whether the trial court erred in granting defendant's motion, and in denying plaintiff's motion, for summary judgment on the grounds that the desired condemnation was not for "the public use or benefit" as required by N.C.G.S. § 40A-3. In an unpublished opinion, the Court of Appeals held that the trial court did not err and affirmed its orders accordingly. We reverse. We hold that the provision of telephone service, irrespective of the number of customers affected, is an action for "the public use or benefit" and that the trial court's orders granting summary judgment for defendant and denying summary judgment for plaintiff were therefore improper.

The forecast of evidence in this case tends to show the following facts and circumstances. Plaintiff is a North Carolina corporation and a public utility providing telephone services to the citizens of central North Carolina. Defendant is a private citizen who owns approximately twenty-five acres of land adjacent to North Carolina State Road 2009 in Harnett County, North Carolina. Dennis P. Turlington, one of plaintiff's customers, owns roughly twenty-one acres of land lying to the south and west of defendant's land. Defendant's land lies directly between Mr. Turlington's land and the state road.

Mr. Turlington, who lives in a mobile home on his property, is a self-employed carpenter and desires to operate his business from his property. Mr. Turlington has farmed his land, has cut wood from it, and holds recreational activities there. His inability to access his property from any state-maintained road has been the subject of several controversies involving defendant. Some of these controversies have been tried before the courts of this state, and one was pending at the time this cause was argued before this Court.

Sometime during 1979, plaintiff installed an underground telephone cable to Mr. Turlington's property across defendant's land. Plaintiff chose to install the line across defendant's land because this was the shortest route to a state-maintained road and a pre-existing telephone terminal. Plaintiff, apparently through inadvertence, failed to obtain defendant's permission to install the cable in question or to obtain an easement or any other legal right to go on defendant's land. Nevertheless, defendant made no objection about the line, nor about plaintiff's mainte-

nance of it, for nearly six years. However, on 5 July 1985, apparently in response to a cartway proceeding instituted against defendant by Mr. Turlington and in response to other difficulties between the two, defendant demanded that plaintiff remove the cable or face an action in trespass.

Plaintiff complied with defendant's request and dug up the line. Left without telephone service, Mr. Turlington filed a complaint with the North Carolina Utilities Commission in October 1985 seeking to have his telephone service reinstated. In December 1985, the Commission issued a "recommended order" instructing plaintiff to restore service to Mr. Turlington by obtaining a permissive way across defendant's property or, alternatively, by condemning a right-of-way pursuant to N.C.G.S. § 40A-19.

Accordingly, plaintiff then made numerous unsuccessful attempts to secure defendant's permission to gain an easement or a right-of-way for the telephone line across her land. Plaintiff met with a similar lack of success upon trying to secure similar permission from other adjacent landowners for less convenient routes. Having failed to secure the permissive use of either defendant's land or that of any other of Mr. Turlington's neighbors, plaintiff instituted the present action on 21 February 1986.

In her answer to plaintiff's complaint, defendant asserted that plaintiff is not entitled to condemn defendant's property because the desired condemnation is not for "the public use or benefit," as required by N.C.G.S. § 40A-3. Moreover, in an included counterclaim, defendant alleged that plaintiff is liable to her in trespass. Both plaintiff and defendant filed motions for summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure. The trial court denied plaintiff's motion for summary judgment on the condemnation claim and granted plaintiff's motion for summary judgment on defendant's counterclaim for trespass. The trial court granted defendant's motion for summary judgment on the condemnation claim, holding that, here, the desired condemnation was not for "the public use or benefit." The Court of Appeals affirmed the trial court's orders.

Pursuant to N.C.G.S. § 7A-31, we allowed plaintiff's petition for discretionary review of the Court of Appeals' decision affirming the trial court's order denying plaintiff's Petition to Acquire an Easement for telephone service. The propriety of the trial

court's disposition of defendant's counterclaim for trespass is not before us, and accordingly, we do not address it. The question plainly before us is this: Does provision of telephone service to a single customer constitute a "public use or benefit" for purposes of N.C.G.S. § 40A-3? The Court of Appeals answered "no." We believe the correct answer is "yes" and we reverse.

Eminent domain is the power of the nation or of a sovereign state to take, or to authorize the taking of, private property for a public use without the owner's consent and upon payment of just compensation. 26 Am. Jur. 2d *Eminent Domain* § 1 (1966). Any state legislature, and therefore the North Carolina General Assembly, has the right to determine what portion of this power it will delegate to public or private corporations to be used for the public's benefit. *Colonial Pipeline Co. v. Neill*, 296 N.C. 503, 251 S.E. 2d 457 (1979). In North Carolina, for example, it is clear that private corporations, "for the construction of . . . telephones," may condemn property through the power of eminent domain if such condemnation is for "the public use or benefit." N.C.G.S. § 40A-3 (1984). It is uncontested that plaintiff, as a provider of telephone service in central North Carolina, is such a corporation. The issue before us is simply whether the use intended by plaintiff—provision of telephone service to a single customer—is for "the public use or benefit."

While delegation of the power of eminent domain is for the legislature, the determination of whether the condemnor's intended use of the land is for "the public use or benefit" is a question of law for the courts. *Highway Commission v. Batts*, 265 N.C. 346, 144 S.E. 2d 126 (1965); *Charlotte v. Heath*, 226 N.C. 750, 40 S.E. 2d 600 (1946). This task has not proven easy. While it is clear that the power of eminent domain may not be employed to take private property for a purely private purpose, *Highway Commission v. Thornton*, 271 N.C. 227, 156 S.E. 2d 248 (1967), it is far from clear just how "public" is public enough for purposes of N.C.G.S. § 40A-3. As we have stated on numerous occasions, the statutory phrase "the public use or benefit" is incapable of a precise definition applicable to all situations. *Highway Comm. v. School*, 276 N.C. 556, 173 S.E. 2d 909 (1970); *Highway Commission v. Batts*, 265 N.C. 346, 144 S.E. 2d 126. Rather, because of the progressive

demands of an ever-changing society and the perpetually fluid concept of governmental duty and function, the phrase is elastic and keeps pace with changing times. *Highway Commission v. Batts*, 265 N.C. 346, 144 S.E. 2d 126.

However, judicial determination of whether a condemnor's intended use is an action for "the public use or benefit" under N.C.G.S. § 40A-3 is not standardless. On the contrary, courts in this and other states have employed essentially two approaches to this problem. The first approach—the public *use* test—asks whether the public has a right to a definite use of the condemned property. 26 Am. Jur. 2d *Eminent Domain* § 27 (1966). The second approach—the public *benefit* test—asks whether some benefit accrues to the public as a result of the desired condemnation. *Id.* We find that both approaches, when applied to the specific facts of this case, yield the identical conclusion. Plaintiff's condemnation of defendant's property, albeit to provide telephone service to but a single customer, is an action for "the public use or benefit." Accordingly, the trial court's decision granting defendant's motion, and denying plaintiff's motion, for summary judgment on the condemnation claim was improper.

We look first at the public use test. Under this first approach, the principal and dispositive determination is whether the general public has a right to a definite use of the property sought to be condemned. 26 Am. Jur. 2d *Eminent Domain* § 27 (1966). Significantly, this Court has emphasized that it is the public's *right* to use, not the public's actual use, which is important to this first approach. *Highway Commission v. Thornton*, 271 N.C. 227, 156 S.E. 2d 248; *Charlotte v. Heath*, 226 N.C. 750, 40 S.E. 2d 600. In *Thornton*, for example, wherein we held that a road ending in a cul-de-sac can constitute a public use, we stated that "if the public generally may use the road, as a matter of right, on an equal, common basis, the road is a public road irrespective of how many people actually use it." *Highway Commission v. Thornton*, 271 N.C. 227, 243, 156 S.E. 2d 248, 260. In *Heath*, a case involving the condemnation of private property for water and sewer services, we stated that the intended use " 'may be for the inhabitants of a small or restricted locality; but the use and benefit must be in common, not to particular individuals or estates.' " *Charlotte v. Heath*, 226 N.C. 750, 756, 40 S.E. 2d 600, 605 (quoting *Miller v. Pulaski*, 109 Va. 137, 143, 63 S.E. 880, 883 (1909) ).

Our emphasis of the right to use, rather than actual use, is consistent with decisions from other jurisdictions. For example, the Virginia Supreme Court, in *Iron Company v. Pipeline Company*, 206 Va. 711, 146 S.E. 2d 169 (1966), stated as follows:

"The character of the use, whether public or private, is determined by the extent of the right by the public to its use, and not by the extent to which that right is, or may be, exercised. If it is a public way in fact, it is not material that but few persons will enjoy it. * * *"

*Id.* at 715, 146 S.E. 2d at 172 (quoting *Dismal Swamp R. Co. v. Roper L. Co.*, 114 Va. 537, 546, 77 S.E. 598, 605 (1913)).

A Texas court followed a similar approach in *Dyer v. Texas Electric Service Co.*, 680 S.W. 2d 883 (Tex. App. 1984), a case in which electric service provided to a single corporate customer was determined to be a public use. The Texas court stated that it is "immaterial" if the use is limited to citizens of a certain location or that few people will in fact exercise the right to use. *Id.* at 885. The key point, stated the court, is that the use is "open to all who choose to avail themselves of it. The mere fact that the advantage of the use inures to a particular individual . . . will not deprive it of its public character." *Id.*

Under this first approach, the public use test, this plaintiff's intended use is clearly for "the public use or benefit" for purposes of N.C.G.S. § 40A-3, and accordingly, plaintiff is entitled to the desired condemnation. While it is true that, by its action, plaintiff wishes to provide telephone service to a single customer, once the telephone cable is laid, every member of the public will have a common and identical right to use that telephone line. Such is the nature of telephonic communication. Any member of the public who wishes to do so may pick up his own telephone and dial Mr. Turlington at the appropriate number. Likewise, Mr. Turlington may access any other phone in the surrounding community merely by dialing the proper number. Moreover, once installed, access to telephone service would be available at the location to Mr. Turlington's successors in title or possession. Because it is the right to use the line and not the actual use of the line which is dispositive here, *Highway Commission v. Thornton*, 271 N.C. 227, 156 S.E. 2d 248, the degree to which any of these hypothetical uses in fact occurs is irrelevant. Like the road at issue in *Thorn-*

*ton*, because the public generally may use Mr. Turlington's telephone line as a matter of right on an equal and common basis, the line is a public line without regard to how many people actually use it. *Id.* Under the public use test, therefore, plaintiff's intended use constitutes an action for "the public use or benefit" for purposes of the statute in question.

However, use by the general public as a *universal* test of whether a desired condemnation constitutes an action for "the public use or benefit" has been recognized as inadequate. 26 Am. Jur. 2d *Eminent Domain* § 29 (1966). Accordingly, we turn now to another approach, the public benefit test. Generally, under the public benefit test, a given condemnor's desired use of the condemned property in question is for "the public use or benefit" if that use would contribute to the general welfare and prosperity of the public at large. 26 Am. Jur. 2d *Eminent Domain* § 27 (1966). However, judicial decisions in this and other states reveal that not just any benefit to the general public will suffice under this test. Rather, the taking must " 'furnish the public with some necessity or convenience which cannot readily be furnished without the aid of some governmental power, and which is required by the public as such.' " *Charlotte v. Heath*, 226 N.C. 750, 755, 40 S.E. 2d 600, 604 (1946) (quoting 18 Am. Jur. *Eminent Domain* § 38 (1938)). In *Charlotte v. Heath*, 226 N.C. 750, 40 S.E. 2d 600, for example, in finding that the exercise of the power of eminent domain was proper, we held that provision of much-needed water and sewerage services to a small community of people by the City of Charlotte satisfied this public benefit test.

The facts of the case at bar satisfy the public benefit test. In this day and age, as we near the end of the twentieth century, the escalating importance of telephones and telephone systems cannot be gainsaid. As we stated above, plaintiff's provision of telephone service to Mr. Turlington will allow him and his successors to access other members of his community by merely dialing the correct numbers on his telephone. Moreover, it will ensure that members of the local community, should they so desire, may gain access to him or his successors by doing the same. In short, provision of telephone service to a single customer, to ensure that an entire community is interconnected is, like the water and sewerage service at issue in *Heath*, a necessity required by the public in this day and age. Also, like the service in *Heath*, telephone

Carolina Telephone and Telegraph Co. v. McLeod

service for the whole community is a necessity which cannot readily be provided without some governmental aid. The North Carolina General Assembly no doubt understood this when it passed N.C.G.S. § 40A-3 and thereby delegated to telecommunication companies the power of eminent domain. N.C.G.S. § 40A-3 (1984). We find that plaintiff's desired use of the property in question satisfies the public benefit test and therefore satisfies "the public use or benefit" requirement of our statutory provisions for private condemnation.

A final method of analysis has been employed by courts in several states in cases where, as here, the condemnor's desired use clearly includes both private and public traits. The general rule in such cases is that a taking can be for public use or benefit even when there is also a substantial private use so long as the private use in question is incidental to the paramount public use. *See* 26 Am. Jur. 2d *Eminent Domain* § 32 (1966).

This Court applied this general rule in *Highway Comm. v. School,* 276 N.C. 556, 173 S.E. 2d 909 (1970), and we find our analysis there to be instructive in the case at bar. In that case, the C. A. Mashburn family, by virtue of the construction of Interstate 40, was rendered landlocked by the new highway and defendant school's property. The Highway Commission (now the Department of Transportation) sought to condemn a portion of the school's property in order to allow the Mashburn family access to the Sand Hill Road. The school opposed the Highway Commission's effort. Speaking for a unanimous Court and holding that the Highway Commission was entitled to exercise eminent domain on those facts, Justice (later Chief Justice) Sharp stated:

"[T]he exercise of eminent domain for a public purpose which is primary and paramount will not be defeated by the fact that incidentally a private use or benefit will result which will not of itself warrant the exercise of a power. . . . The controlling question is whether the paramount reason for the taking of the land to which objection is made is the public interest, to which benefits to private interests are merely incidental, or whether, on the other hand, the private interests are paramount and controlling and the public interests merely incidental."

*Highway Comm. v. School,* 276 N.C. 556, 562-63, 173 S.E. 2d 909, 914 (quoting 26 Am. Jur. 2d *Eminent Domain* §§ 32, 33 (1966) ). Justice Sharp stated further that because the new access was "auxiliary to, and necessitated by, the construction of Interstate Highway No. 40" and "an incidental part of a comprehensive and complex highway project of national significance," the condemnation was primarily for public use or benefit. *Id.* at 562, 173 S.E. 2d at 914.

Application of Justice Sharp's reasoning to the case at bar yields yet again the conclusion that this plaintiff's desired use of the property in question—to provide telephone service to Mr. Turlington—was an action for "the public use or benefit" for purposes of N.C.G.S. § 40A-3. It is admitted that plaintiff's action will have as one of its effects the provision of telephone service to a single customer, Mr. Turlington. However, we find that, just as providing access to the Mashburn family was an incidental part of a large and very important highway project, the provision of telephone service to Mr. Turlington is a small part of a more important and more far-reaching effort—the effort to ensure that, in an era in which the telephone has truly become a necessity, whole communities, as well as members of individual communities, are interconnected by telephone systems. As we stated above in our analysis of this case under the public benefit test, the singular importance of telephones and of telephone systems in today's society simply cannot be overstated. It cannot seriously be argued that the public's best interests are served by denying telephone service to any member of our society. Accordingly, plaintiff's desired use of the property in question is, in our opinion, for "the public use or benefit" and its exercise of eminent domain should have been allowed here.

In conclusion, we hold that the provision of telephone service, irrespective of the number of customers directly affected, constitutes an action for "the public use or benefit" for purposes of N.C.G.S. § 40A-3 and is therefore a use for which plaintiff may properly exercise its statutory power of eminent domain. Therefore, in the case at bar, the trial court erred in granting defendant's motion for summary judgment and in denying plaintiff's motion for summary judgment on the grounds that plaintiff's desired use of the land in question is *not* for "the public use or benefit" as required by N.C.G.S. § 40A-3. Moreover, the Court of

Appeals erred in affirming the trial court's erroneous orders. Accordingly, we reverse and remand to the Court of Appeals with instructions to that court to remand to the Superior Court, Harnett County, for entry of summary judgment for plaintiff on the condemnation claim and for further proceedings consistent with this opinion.

Reversed and remanded.