CATAWBA COUNTY, A NORTH CAROLINA BODY POLITIC, PLAINTIFF v. CHARLIE C. WYANT AND WIFE, MARY JANE RHONEY WYANT, DEFENDANTS AND CATAWBA COUNTY, A NORTH CAROLINA BODY POLITIC, PLAINTIFF v. JOHNNY LEE WYANT AND WIFE, ELAINE W. WYANT, DEFENDANTS AND CATAWBA COUNTY, A NORTH CAROLINA BODY POLITIC, PLAINTIFF v. FARRELL C. JOHNSON AND WIFE, LOTTIE L. JOHNSON; STEVE F. JOHNSON AND WIFE, APRIL G. JOHNSON; AND RONALD D. JOHNSON AND WIFE, PATRICIA E. JOHNSON, DEFENDANTS

No. COA08-1159

(Filed 16 June 2009)

**Eminent Domain— condemnation—sewer line easement—public purpose**

The trial court did not err by finding and concluding that the condemnation of defendants' land for a sewer line easement was for a public purpose because: (1) the record evidence established that the sewer line connected both plaintiff county's landfill and a lumber company with the City of Newton's Clark Creek Wastewater Treatment Plant, and at least seven other users are or will be connecting to the sewer line; (2) the evidence showed that the purpose of connecting the landfill to the public sewer system was primary and paramount, and that purpose was not defeated by the fact that the lumber company will also use or benefit from the sewer line; (3) plaintiff was required by N.C.G.S. § 40A-40(a) to give notice only that the purpose of the condemnation was for a sewer line, and did not have to give notice as to all the planned or potential users of the sewer line; (4) Chapter 40 does not require plaintiff to negotiate voluntary easements with defendants prior to instituting condemnation proceedings and is devoid of any provision imposing a duty on plaintiff to hold public hearings at any point regarding the condemnation proceedings; and (5) the construction of the sewer line was necessary for plaintiff to adequately treat leachate and to remain compliant with state regulations, which in turn, benefits the public generally.

Appeal by Defendants from judgment entered 2 June 2008 by Judge Anderson D. Cromer in Catawba County Superior Court. Heard in the Court of Appeals 26 February 2009.

*Anne Marie Pease and Patrick, Harper & Dixon, by Stephen M. Thomas, for Plaintiff.*

*Daniel G. Christian and Forrest A. Ferrell for Defendants.*

STEPHENS, Judge.

## I. Procedure

Catawba County ("Plaintiff") filed actions on 12 May 2006 to condemn property owned by Charlie C. Wyant and his wife, Mary Jane Rhoney Wyant (06 CVS 1573), Johnny Lee Wyant and his wife, Elaine W. Wyant (06 CVS 1575), Farrell C. Johnson and his wife, Lottie L. Johnson, Steve F. Johnson and his wife, April G. Johnson, and Ronald D. Johnson and his wife, Patricia E. Johnson (06 CVS 1576) (collectively "Defendants"). Defendants timely filed answers challenging the authority of Plaintiff to condemn the properties at issue. By stipulation of the parties, the actions were joined together for the trial court to determine all issues except compensation pursuant to N.C. Gen. Stat. § 40A-47. On 3 September 2007, the Honorable Anderson D. Cromer conducted a bench trial of the consolidated actions in Catawba County Superior Court. On 2 June 2008, Judge Cromer entered judgment, finding that Plaintiff's taking of the various parcels of Defendants' property was for a public purpose under Chapter 40A of the North Carolina General Statutes, which governs local public condemnation proceedings. From this judgment, Defendants appeal.

## II. Facts

Plaintiff owns and operates the Blackburn Landfill located at 4017 Rocky Fork Road, Newton, North Carolina. The Blackburn Landfill is a Municipal Solid Waste Landfill ("MSWLF") as defined in 40 C.F.R. § 258.2. Plaintiff seeks to construct or has already constructed a sewer line to connect Plaintiff's property that is or was located at and around the Blackburn Landfill with the existing sewer lines of the City of Newton ("the sewer line"). Defendants own land through which the sewer line would and does pass.

Pursuant to 40 C.F.R. § 258.40, which was adopted in 1991, all new MSWLF units and lateral expansions require a leachate[1] collection system. Plaintiff's first waste area requiring leachate collection, Unit 1, began operating in January 1998. The phased construction of the Unit 2 waste area began in 1997, and the phased construction of the Unit 3 waste area began in 2008. In 1997, the North Carolina Department of Environmental and Natural Resources ("NCDENR") enacted new solid waste rules, requiring solid waste landfills to connect their leachate systems to a public sewer if available, or to pump and haul the leachate to a state permitted and certified wastewater

---

1. Leachate is rainwater that comes into contact with solid waste.

treatment facility. As no public sewer service was available in the immediate area of the Blackburn Landfill in 1997, and future construction of a public sewer system would have taken considerable time to plan, budget, and construct, Plaintiff obtained permits from the state to construct leachate storage tanks in order to comply with the solid waste rules.

Plaintiff pumped leachate from lined landfill waste areas to the storage tanks and then transferred the leachate by tanker truck to the City of Hickory's Henry Fork Wastewater Treatment Plant. This pump and haul system is considered temporary under NCDENR rules and permits are issued in six-month increments until a permanent solution is instituted.

In 1999, Plaintiff hired McGill Associates ("McGill") to prepare a solid waste master plan. In developing the plan, Plaintiff and McGill considered alternatives to the pump and haul system. In 2001, the amount of leachate collected far exceeded the storage capacity of the storage tanks so Plaintiff decided to move forward with connecting the leachate collection system to a public sewer system. Plaintiff hired Hayes, Seay, Mattern and Mattern ("HSMM") to study and evaluate connection options with the City of Hickory, the City of Newton, and the Town of Maiden.

In July 2003, the Catawba County Economic Development Corporation approached Plaintiff with a proposition to locate a lumber company called Gregory Wood Products, Inc. ("GWP") on the Blackburn Landfill property, potentially creating 125 jobs as well as providing the opportunity to seek economic grants that would fund a portion of the sewer project. In December 2003, Plaintiff entered into an Economic Development Agreement with "G&G Lumber" through GWP. In exchange for GWP's agreement to construct and operate a sawmill or lumber processing company, Plaintiff agreed to transfer title of Plaintiff's property located below the Blackburn Landfill to GWP. Additional incentives for GWP included extension of water and sewer service to the property and roadway improvements.

On 7 June 2004, based on HSSM's recommendation, Plaintiff contracted with the City of Newton to dispose of the Blackburn Landfill leachate at the Clark Creek Wastewater Treatment Plant. Plaintiff was responsible for the design and construction of all piping and pump stations and for securing the easements necessary to connect the Blackburn Landfill area to Newton's sewer system.

To help finance the water lines, sewer lines, and roadway improvements, Plaintiff sought funding through state and federal grants. Plaintiff applied for a Project Grant from the Economic Development Administration of the United States Department of Commerce ("EDA"). The grant was targeted at promoting long-term economic development in areas experiencing substantial distress by investing in the construction and rehabilitation of essential public infrastructure and development facilities. Plaintiff also applied for a Community Development Block Grant ("CDBG") from the North Carolina Department of Commerce. This grant provided funds for public infrastructure to help facilitate job creation. Both grant applications state only that the sewer line would serve GWP.

Pursuant to the requirements of the North Carolina Department of Commerce, two public hearings were held regarding the CDBG application. Plaintiff's published notice for the second hearing stated that funds from the grant would be used to install water lines and sewer lines, and to construct a road to serve GWP. Plaintiff did not notify citizens that the sewer line would serve anyone other than GWP. The EDA grant was awarded to Plaintiff on 14 December 2004 and the CDBG was awarded to Plaintiff on 2 July 2004.

Plaintiff estimated that the Blackburn Landfill would utilize approximately 90% of the capacity in the new sewer line, with GWP and other entities utilizing the remaining 10%. In addition to the Blackburn Landfill and GWP, seven other users were committed to connecting to the sewer line, and 28 additional property owners were eligible to connect. The seven users who had committed to connection included P1 Catawba Development Company; county residents Johnny and Eunice Punch; Oakwood Farm, LLC; a Target Distribution Center; the City of Newton Jacobs Ford Park; the Catawba County Bio-Solids Facility; and the Catawba County Bio-Energy Facility.

In May 2005, Plaintiff hired Camp, Dresser and McKee ("CDM") to design the sewer line between the Blackburn Landfill area and the City of Newton's waste treatment plant. The project was named the "G&G Sewer Project." In order to proceed with the construction of the sewer line, Plaintiff had to either obtain voluntary easements from the property owners along the sewer line or condemn the property needed. In July 2005, Plaintiff hired Martin-McGill, a consulting firm, to obtain the necessary voluntary easements. In late 2005, Plaintiff discovered that it would have to secure approximately 17 additional easements from property owners along the sewer project route; the property owners affected included Defendants. Ms.

CATAWBA CTY. v. WYANT

[197 N.C. App. 533 (2009)]

Kathryne Alonso of Martin-McGill contacted Defendants to try to obtain voluntary easements for the sewer line. Ms. Alonso informed Defendants that the sewer line was for GWP and that Defendants could not connect to it.

Plaintiff was unable to obtain a voluntary easement from Defendants and initiated condemnation proceedings on 12 May 2006.

### III. Discussion

Defendants argue that the trial court erred in finding and concluding that the condemnation of Defendants' land for the sewer line easement was for a public purpose.

In the exercise of the sovereign power of eminent domain, a county may only take private property for the public use or benefit and upon the payment of just compensation. *State Highway Comm'n v. Batts*, 265 N.C. 346, 355, 144 S.E.2d 126, 133 (1965). On appeal, "[a] trial court's findings of fact in a bench trial have the force of a jury verdict and are conclusive . . . if there is evidence to support them." *Browning v. Helff*, 136 N.C. App. 420, 423, 524 S.E.2d 95, 98 (2000). Whether a condemnor's intended use of the land is for the public use or benefit is a question of law for the courts, *Piedmont Triad Airport Auth. v. Urbine*, 354 N.C. 336, 338, 554 S.E.2d 331, 332 (2001), *cert denied*, 535 U.S. 971, 152 L. Ed. 2d 381 (2002), reviewable *de novo* on appeal.

"[T]he statutory phrase 'the public use or benefit' is incapable of a precise definition applicable to all situations." *Carolina Telephone and Telegraph Co. v. McLeod*, 321 N.C. 426, 429, 364 S.E.2d 399, 401 (1988). However, in determining whether a particular undertaking by a municipality is for a public use or benefit, courts have looked at whether the undertaking "involves a reasonable connection with the convenience and necessity of the particular municipality[,]" and whether "the activity benefits the public generally, as opposed to special interests or persons." *Piedmont Triad Airport Auth.*, 354 N.C. at 339, 554 S.E.2d at 333 (quotation marks and citations omitted).

The trial court made the following findings of fact relevant to the sewer line's public use or purpose:

> 7. Plaintiff seeks to construct or has already constructed a sewer line that connected its property that is or was located at and around the Blackburn Landfill with the existing sewer lines of the City of Newton . . . .
>
> . . . .

10. "Leachate" is rainwater that comes into contact with solid waste.

11. Pursuant to 40 C.F.R. [§] 258.40, which was adopted in 1991, all new MSWLF units and lateral expansions require a leachate collection system.

12. Plaintiff's first waste area requiring leachate collection, Unit 1, began operating on January 1, 1998.

13. The phased construction of the Unit 2 waste area began in 1997 and the phased construction of the Unit 3 waste area began in 2008.

14. In 1997, the North Carolina Department of Environment and Natural Resources ("NCDENR") enacted new Solid Waste Rules, requiring solid waste landfills to connect their leachate collection systems to a public sewer system (if available) or to pump and haul the leachate to a State permitted and certified wastewater treatment facility.

15. In 1997, no public sewer service was available in the immediate area of the landfill . . . . Therefore, Plaintiff sought permits from the State of North Carolina for the construction of leachate storage tanks on the Blackburn Landfill property in order to comply with North Carolina's newly adopted Solid Waste Rules.

. . . .

21. In 2001, Plaintiff decided to move forward with connection of the leachate collection system to a public sewer system.

22. . . . Plaintiff began to consider the available options of extending sewer service to the landfill. The three public sewer systems to be considered for connection to the landfill were systems owned by the City of Hickory, the City of Newton and the Town of Maiden.

23. . . . To identify the most economical route for connecting the sewer, Plaintiff hired Hayes, Seay, Mattern and Mattern (HSMM), a consulting firm, to study and evaluate the three connection options.

. . . .

25. In July of 2003, Scott Millar, President of the Catawba County Economic Development Corporation, approached Barry

Edwards, Utilities and Engineering Director for Catawba County, about a potential Economic Development project involving a lumber company considering locating in Catawba County. Specifically, Mr. Millar consulted with Barry Edwards because of the availability of "industrial property" within the Blackburn Landfill area. . . .

. . . .

27. In August of 2003, . . . the lumber company was inquiring about the availability of sewer service to the potential industrial sites in the Blackburn Landfill area.

28. Because Plaintiff was already in the process of planning a sewer system to remove leachate from the Blackburn [L]andfill, sewer service to potential industrial sites in the Blackburn Landfill area became one of the many incentives Plaintiff could utilize to attract industry to the county and specifically to the Blackburn Landfill area.

. . . .

35. In April of 2004, HSMM . . . recommended that the County connect the Blackburn Landfill area to the City of Newton treatment plant.

36. On June 7, 2004, Plaintiff executed a contract with the City of Newton for 25,000 gallons per day of capacity in the City of Newton's Clark Creek Wastewater Treatment Plant for delivery of the landfill leachate for treatment in the City's plant.

37. Pursuant to the contract . . ., Plaintiff was solely responsible for the design and construction of all of the piping and pump stations as well as securing all of the rights of way necessary to connect the Blackburn Landfill area to Newton's sewer system.

38. In May of 2005, Plaintiff hired Camp, Dresser and McKee ("CDM"), an engineering firm, to design the sewer line between the Blackburn Landfill area and the City of Newton waste treatment plant.

39. The sewer project was named the "G&G Sewer Project", [sic] because, according to Plaintiff, it was its custom to name the project based on the identity of the end user, which in this case would be G&G Lumber Company. . . .

. . . .

42. Plaintiff has caused to be constructed and established across the Defendant/Landowners' respective properties a "forced main" sewer line . . . through which sewage flows under pressure and is pumped from the County's present or formerly owned property to the existing City of Newton wastewater collection system. It provides service to Gregory Wood Products, the Sawmill Industrial Site, as well as at least eight other users that are connected or will be connecting. These users include the Catawba County Blackburn Landfill, including its leachate collection system; the Catawba County Bio-Solids Facility; the Catawba County Bio-Energy Facility; P1 Catawba Development Company; Johnny and Eunice Punch; Oakwood Farm, LLC; Target Distribution Center[;] and City of Newton Jacobs Fork Park.

[49]. Taken and viewed in its entire context, Plaintiff seeks permanent sewer easements and temporary construction easements for the connecting sewer line for a public purpose, public use or benefit. Furthermore, the public notices, legal descriptions and statements made by individuals negotiating with the individual landowners do not estop Plaintiff from taking property for a legitimate purpose, use or benefit.

Defendants assign error only to finding of fact number [49], arguing that the trial court erred in analyzing whether condemning property to build a sewer line to connect the Blackburn Landfill with the county sewer system was for a public purpose because the sewer line at issue was not intended to serve Blackburn Landfill at all.

Specifically, Defendants contend that "the evidence in the record indicated the [sewer] line was to serve [only] GWP, a private entity[,]" in that "all of the evidence establishes that the stated, published, noticed[,] and communicated purpose [of the sewer line] was to serve GWP." In essence, Defendants contend that public notices promulgated by Plaintiff which referenced only GWP as the entity to be served by the sewer line proves Defendants' position that, in fact, the purpose of the sewer line is entirely private. We disagree.

The evidence of record establishes that the sewer line connects both Blackburn Landfill and GWP with the City of Newton's Clark Creek Wastewater Treatment Plant. Furthermore, at least seven other users are or will be connecting to the sewer line.

"[A] taking can be for public use or benefit even when there is also a substantial private use so long as the private use in question is

incidental to the paramount public use." *Carolina Telephone & Telegraph Co.*, 321 N.C. at 433, 364 S.E.2d at 403 (citing 26 Am. Jur. 2d Eminent Domain § 32 (1966)). While the sewer line may not serve Blackburn Landfill exclusively, Barry Brian Edwards, the Director of Utilities and Engineering for Catawba County, testified that approximately 90% of the capacity of the sewer line will be utilized by Blackburn Landfill, and Jack Chandler, Public Services Administrator for Catawba County, testified that GWP would use approximately three to five percent of the sewer line capacity. Thus, the evidence in the record shows that the purpose of connecting Blackburn Landfill to the public sewer system was primary and paramount, and that purpose is not defeated by the fact that GWP will also use or benefit from the sewer line.

Second, Defendants argue that if Plaintiff "intended for the sewer line to serve Blackburn Landfill," then Plaintiff should have specifically stated that intention in the statutory notice required by N.C. Gen. Stat. § 40A-40(a).

At least 30 days prior to filing a complaint, a public condemnor must provide notice to each property owner of the condemnor's intent to institute a civil action to condemn property. N.C. Gen. Stat. § 40A-40(a) (2007). The pre-suit notice must contain a statement of "the purpose for which the property is being condemned[.]" *Id.* Although "[t]here are no North Carolina cases or statutes detailing the specificity with which the notice must state the 'purpose' of the condemnation[,]" *Scotland Cty. v. Johnson*, 131 N.C. App. 765, 769, 509 S.E.2d 213, 215 (1998), this Court has explained that the notice need not specifically state each and every intended "use" of the property. *Id.*

In this case, the notice provided to Defendants pursuant to N.C. Gen. Stat. § 40A-40(a) stated that the condemnation was "for a sewer line, to be part of the county sewer system." The evidence indicates that Plaintiff planned to build, or had already built, a sewer line which extended from the property on and around the Blackburn Landfill to the City of Newton's Clark Creek Wastewater Treatment Plant. While the sewer line connected the Blackburn Landfill, GWP, seven other users, and potentially 28 additional property owners to the Clark Creek Wastewater Treatment Plant, Plaintiff was required by N.C. Gen. Stat. § 40A-40(a) to give notice only that the purpose of the condemnation was for a sewer line, and did not have to give notice as to all the planned or potential users of the sewer line.

Defendants further complain that when Plaintiff attempted to secure voluntary easements from Defendants and held public hearings regarding the CDBG, neither Plaintiff nor its agents informed Defendants that the sewer line was to serve any person or entity other than GWP. This argument is without merit.

Chapter 40A plainly does not require Plaintiff to negotiate voluntary easements with Defendants prior to instituting condemnation proceedings. *See* N.C. Gen. Stat. § 40A-4 (2007) ("The power to acquire property by condemnation shall not depend on any prior effort to acquire the same property by gift or purchase . . . ."). Plaintiff's attempts to secure voluntary easement agreements were not mandated by law; they were entirely gratuitous. Furthermore, Chapter 40A is devoid of any provision which imposes a duty on Plaintiff to hold public hearings at any point regarding the condemnation proceedings. The public hearings Plaintiffs complain of concerned the CDBG application and were held pursuant to the requirements of the North Carolina Department of Commerce as part of its review of the grant application. Accordingly, Plaintiff was not required to provide notice to Defendants during those hearings as to the purpose of the condemnation.

A thorough review of the record thus reveals that the trial court's findings of fact are amply supported by competent evidence, much of which is uncontradicted. Based on the above-stated findings of fact, the trial court concluded, *inter alia*, that Plaintiff's connection of the Blackburn Landfill leachate collection system and the Blackburn Landfill to a public sewer system is for a public purpose.

The evidence before this court, and the trial court's findings of fact, support this conclusion. The evidence establishes that removal of leachate from the Blackburn Landfill has been a matter of public concern and legal obligation for Plaintiff since at least 1997. Plaintiff has been disposing of leachate with a temporary pump and haul system, in compliance with regulation, since 1997. However, increased leachate production at the Blackburn Landfill necessitated that Plaintiff connect the leachate collection system to a public sewer system in order to remain in compliance with state regulation.

As the construction of the sewer line was necessary for Plaintiff to adequately treat leachate and to remain compliant with state regulation, which, in turn, benefits the public generally, *see Piedmont Triad Airport Auth.*, 354 N.C. at 339, 554 S.E.2d at 333, the trial court did not err in concluding that the connection of the Blackburn

Landfill leachate collection system and the Blackburn Landfill to a public sewer system is a public purpose as defined by Chapter 40A and that Defendants failed to meet their burden of proof that the taking of Defendants' property is not for a public use or benefit as required by Chapter 40A.

AFFIRMED.

Judges JACKSON and STROUD concur.