IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA14-943

 Filed: 21 April 2015

Mecklenburg County, No. 13 CVS 9071

TOWN OF MATTHEWS, a North Carolina municipal corporation, Plaintiff,

 v.

LESTER E. WRIGHT and wife, VIRGINIA J. WRIGHT, Defendants.

 Appeal by Plaintiff from judgment entered on 11 March 2014 by Judge F.

Donald Bridges in Mecklenburg County Superior Court. Heard in the Court of

Appeals on 20 January 2015.

 Benjamin R. Sullivan, Parker Poe Adams & Bernstein, for plaintiff-appellant.

 Peter J. Juran, for defendant-appellees.

 HUNTER, JR., Robert N., Judge.

 The Town of Matthews appeals from a judgment dismissing its condemnation

claim taking the road fronting Lester and Virginia Wright’s home. The Town

contends the trial court misapplied the “public use or benefit” test set forth in N.C.

Gen. Stat. § 40A-3(b). We affirm the dismissal.

 I. Factual & Procedural History

 The Wrights own a home in a subdivision in Matthews. Their 1984 warranty

deed contains a thirty-foot street easement known as “Home Place” which extends

the full length of the North side and a part of the East side of their lot. One end of
 TOWN OF MATTHEWS V. WRIGHT

 Opinion of the Court

the street is a dead end. The Wrights’ lot is near the dead end. At the other end of

the street is an outlet which all landowners use to connect to Reveredy Lane. The

Wrights and five other landowners have built homes along Home Place.

 Who Owns Home Place?

A. Wright v. Town of Matthews (“Wright I”), 177 N.C. App. 1, 627 S.E.2d 650
 (2006).

 In 2004, the Wrights challenged the Town’s Zoning Board of Adjustment’s

(“Zoning Board”) determination that Home Place was a public street. The Zoning

Board’s 2004 decision was based upon a 1985 resolution declaring Home Place to be

a public street, and the fact that in 1991 the town paved the street. The Wrights

appealed by petition for writ of certiorari the determination to the superior court,

which affirmed the decision of the Board. The Wrights appealed to this Court.

 On 4 April 2006, in Wright I, this Court held that “the findings made by the

Board and the trial court do not support the conclusion that Home Place is a public

street.” Wright I, 177 N.C. App. at 16, 627 S.E.2d at 661. A private street or right-

of-way may only become a public street by one of three methods: “(1) in regular

proceedings before a proper tribunal . . . ; (2) by prescription; or (3) through action by

the owner, such as a dedication, gift, or sale.” Id. at 10, 627 S.E.2d at 658. This Court

held that there was no evidence that Home Place was adjudicated a public street

through a condemnation proceeding or before a proper tribunal. Id. at 10–11, 627

S.E.2d at 658. Additionally, there was no evidence that Home Place was ever the

 2
 TOWN OF MATTHEWS V. WRIGHT

 Opinion of the Court

subject of a gift or sale by the property owners. Id. at 11, 627 S.E.2d at 658.

Therefore, “Home Place could only have become a public street by way of dedication

or prescription.” Id. Because the Town had not maintained Home Place for the

requisite twenty-year time period to establish prescription, we held that the only way

Home Place could have become a public street would be through prior dedication—

either express or implied. Id. at 15, 627 S.E.2d at 661. We reversed the order of the

trial court, and remanded for “further findings detailing whether or not Home Place

became a public street by means of implied dedication.” Id. at 14, 627 S.E.2d at 661.

 Based on the decision of this Court in Wright I, the trial court vacated its

order, and remanded the case back to the Zoning Board. Town of Matthews v. Wright,

194 N.C. App. 552, 553, 669 S.E.2d 841, 842 (2008). At a subsequent hearing on 10

August 2006, the Zoning Board determined “the issue of Implied Dedication was no

longer an issue.” Id.

B. Town of Matthews v. Wright (“Wright II”), 194 N.C. App. 552, 669 S.E.2d 841
 (2008).

 On 9 October 2006, without notice to the Wrights, the Town Board of

Commissioners (“the Board”) adopted a “Resolution Adding Streets To The Matthews

Street System (NUNC PRO TUNC1 [25 March 1985]).” Id. at 554, 669 S.E.2d at 842.

1Nunc pro tunc is “[a] phrase applied to acts allowed to be done after the time when they should be
done, with a retroactive effect, i.e., with the same effect as if regularly done.” Black’s Law Dictionary
1069 (6th ed. 1990).

 3
 TOWN OF MATTHEWS V. WRIGHT

 Opinion of the Court

This resolution purportedly transformed Home Place into a “public street”

retroactively, effective as of 1985. Id.

 On 19 April 2007, the Town filed a complaint alleging the Wrights had erected

two signs and a fence on a public street. Id. at 553, 669 S.E.2d at 841. The complaint

alleged the Town ordered the Wrights to remove the obstructions within twenty days

and they failed to comply. Id. The Wrights counterclaimed alleging trespass and

raised, inter alia, the defense of res judicata. Id. at 553, 669 S.E.2d at 841–42. The

trial court granted summary judgment in favor of the Wrights, finding that “Home

Place is a private road,” and dismissing the Town’s complaint. Id. at 842, 669 S.E.2d

at 554. The Town appealed that decision of the trial court to this Court, arguing that

the nunc pro tunc resolution by the Board precluded the trial court’s finding that

Home Place is a private street. Id. at 555, 669 S.E.2d at 843.

 In Wright II, this Court invalidated the Board’s nunc pro tunc resolution. Id.

at 556, 669 S.E.2d at 843. However, we declined to agree with the trial court’s finding

that “Home Place is a private road” without the requisite findings which we ordered

in Wright I. Id. Therefore, in Wright II, we again reversed the trial court and

remanded the matter for further findings to determine if Home Place was impliedly

dedicated as a public street. Id. at 556, 669 S.E.2d at 844.

 4
 TOWN OF MATTHEWS V. WRIGHT

 Opinion of the Court

C. Town of Matthews v. Wright (“Wright III”), 214 N.C. App. 563, 714 S.E.2d 867,
 2011 WL 3570212 (2011) (unpublished).

 On remand, a hearing was held on 21 July 2010. Wright III, at *3. On 4 August

2010, the trial court issued an order with the following findings:

 11. This Court finds that on March 25, 1985, at a duly
 constituted regular meeting of the Town of Matthews
 Board of Commissioners that a resolution adding streets to
 the Town of Matthews street system was passed by the
 Board and that this resolution included Home Place.
 ....
 14. At no time subsequent to 1985, did the Defendants
 bring an action for inverse condemnation or refuse services
 provided by the Town of Matthews with respect to the
 upkeep and maintenance of Home Place and, as a fact,
 Home Place is a public street and has been such since [a]
 regularly constituted proceeding before a proper tribunal
 in March 1985.

Id. at *4. The Wrights appealed that order. Id. at *1. For a third time, on 16 August

2011, this Court reversed the decision of the trial court and remanded for findings on

implied dedication in accordance with Wright I and Wright II. Id. at *4. In Wright

III, we agreed with the Wrights’ assertion that “[the Town] has twice now ignored the

directive of the Court[,]” id. at *3, and we noted that despite our holdings in Wright I

and Wright II, “no findings of fact were made as to whether Home Place was impliedly

dedicated as a public street.” Id.

 On remand, on 17 September 2012, the issue of implied dedication was heard

by a bench trial before Judge Beverly T. Beal. On 30 November 2012, the trial court

issued a judgment (“the Beal judgment”), deciding the Wrights’ interest in Home

 5
 TOWN OF MATTHEWS V. WRIGHT

 Opinion of the Court

Place was a private right of way and not a public street. The trial court made the

following relevant conclusions of law:

 9. The language used in the deeds of conveyance
 constituting the Defendants’ chain of title, in all of the
 variations, did not except from the land described as
 conveyed the portion contained within Home Place; rather,
 it only excepted from the description a right of way for the
 street. The particular language used in each instance does
 not imply the owner’s intent to offer a dedication of the
 street to any governmental entity at the time of the
 conveyances.
 ....
 11. There was no intent to dedicate Home Place as a
 public street, either real or apparent. There was no implied
 dedication of Home Place as a public street.

After finding that the Wrights’ easement had never been dedicated to the Town, the

trial court dismissed the Town’s cause of action against the Wrights.

 The Beal judgment analyzed only the Wrights’ easement in Home Place by

examining their chain of title. The Beal judgment did not reference any of the

Wrights’ neighbors’ chains of title. At oral argument, counsel for the parties stated

that one landowner has granted the Town an easement to his portion of Home Place,

but admitted that the legal status of the four other neighbors’ easements has not been

established.

D. Current Litigation

 During the months following the issuance of the Beal judgment and leading up

to the Town’s filing of the present condemnation action, the Wrights constructed a

 6
 TOWN OF MATTHEWS V. WRIGHT

 Opinion of the Court

fence on their property—bordering Home Place but not blocking its access. The

evidence shows that the Wrights have never erected any structure that would prevent

access to Home Place.

 Nevertheless, the Wrights’ neighbors expressed concerns to Town of Matthews

Mayor Jim Taylor (“Mayor Taylor”), and to the Town Commissioners, that the

Wrights might eventually block access to Home Place. In the spring of 2013, the

Board held meetings to discuss the possibility of condemning the Wrights’ portion of

Home Place. The minutes of those meetings, as well as emails between the Wrights’

neighbors, Mayor Taylor, and the Town Commissioners shed light on the decision-

making process that led to the present condemnation action.

 On 11 February 2013, the Board held a closed meeting during which the

condemnation action was discussed. The meeting minutes reveal a desire by the

Board to “permanently close the issue” of the Wrights’ ownership of their easement

in Home Place. The minutes also reveal that the Board members disagreed as to

whether condemnation of the Wrights’ property was appropriate. Commissioner

Miller indicated that “it should be up to the neighbors to come to the Town with their

concerns rather than having the Town step in before something actually happens.”

 Immediately following the 11 February 2013 closed Board meeting, Mayor

Taylor emailed the Wrights’ neighbors and others, encouraging them to “voice [their]

concerns” about the Wrights to the Board. Mayor Taylor’s email said “[t]his might

 7
 TOWN OF MATTHEWS V. WRIGHT

 Opinion of the Court

help swing some members of council to see the need to act sooner rather than waiting

for the Wrights to actually block the street or do something else that could limit access

to emergency traffic if it was needed.” Mayor Taylor indicated that he was “sending

this from [his] personal email and not [his] town email in order to protect the privacy

of [the] communication.”

 On 27 February 2013, Commissioner Moore stated in an email to one of the

Wrights’ neighbors that she is “a very good friend” of neighbor Paul Jamison,2 and

that she “fully support[s] moving forward with whatever action the Town must take

to ensure . . . access, security, and safety – before anything happens.” On the same

day, Commissioner Gulley sent an email to another one of the Wrights’ neighbors,

indicating that she “personally believe[s] that we should ‘take’ the street now but not

all council members agree. This has gone on much too long.”

 During the next public Board meeting, on 11 March 2013, Marty Kelso, one of

the Wrights’ neighbors, spoke during the public comment portion of the meeting,

asking for “the Board’s assistance in ensuring that Home Place remains a public

street owned by the Town of Matthews.” George Young also spoke at the meeting in

support of the Wrights. He stated “the taxpayers should [not] be paying any more

money for litigation to deal with Home Place. Any additional litigation should be

between the parcels involved and the Town should stay out of it.”

2 Mr. Jamison owns property near but not abutting Home Place.

 8
 TOWN OF MATTHEWS V. WRIGHT

 Opinion of the Court

 Nevertheless, on 25 March 2013, the Board discussed the condemnation in

closed session and decided to “move forward with [the] condemnation action and place

it on the agenda for discussion in the public meeting on April 8, 2013.” During the 8

April 2013 public session, the Board, at the urging of Mayor Taylor,3 unanimously

approved a resolution stating the Town’s intent to condemn the Wrights’ property.

 On 17 May 2013, the Town filed a complaint pursuant to N.C. Gen. Stat. § 40A,

giving notice of the Town’s intent to condemn a portion of the Wrights’ land through

eminent domain. The complaint included a description of the land to be condemned:

 Being a portion of the Lester and Virginia Wright property
 as recorded in said Deed Book 4850 . . . : BEGINNING at a
 point at or near the certerline of a roadway designated as
 Home Place. The aforesaid point of beginning being the
 northwesterly corner of the Lester E. Wright and Virginia
 J. Wright property as recorded in Book 4850 . . . containing
 20,071 sq. ft. (0.461 acres) more or less.

The complaint also stated the purpose of the condemnation: “for the opening,

widening, extending, or improving roads, streets, alleys, and sidewalks and more

particularly described as Home Place.” The Town estimated that the just

compensation value of the property to be condemned was $1,500. The Town has not

moved to condemn any portion of Home Place other than that portion which lies in

front of the Wrights’ property.

3The meeting minutes describe Mayor Taylor’s statement to the Board as follows: “Minutes or hours,
even seconds, can be the difference between life and death and he doesn’t want anything like that to
occur and have the Board look back and say it could have done something to prevent a tragedy.”

 9
 TOWN OF MATTHEWS V. WRIGHT

 Opinion of the Court

 In the Wrights’ response, they asserted numerous affirmative defenses

including, inter alia, the defenses that the Town’s condemnation serves no public use

or benefit, inadequate compensation, and unclean hands.

 On 21 January 2014, Judge F. Donald Bridges reviewed the condemnation

action pursuant to N.C. Gen. Stat. § 40A-47, which provides that

 [t]he judge, upon motion and 10 days’ notice by either the
 condemnor or the owner, shall, either in or out of session,
 hear and determine any and all issues raised by the
 pleadings other than the issue of compensation, including,
 but not limited to, the condemnor’s authority to take,
 questions of necessary and proper parties, title to the land,
 interest taken, and area taken.

N.C. Gen. Stat. § 40A-47 (2014). Upon agreement between the parties, the trial court

issued a judgment on this matter without further hearing, based on affidavits

submitted by the parties. In its judgment, signed on 11 March 2014, the trial court

made the following relevant finding of fact:

 9. Given [the] factual context, I conclude that the
 action of the Plaintiff’s Board of Commissioners on April 8,
 2013 is simply an attempt to accomplish, through other
 means, what was originally intended by its actions on
 March 25, 1985, February 5, 2004, and October 9, 2006,
 rather than constituting a taking of property for some
 recently realized new need for a public purpose or benefit.

The trial court made the following relevant conclusions of law:

 4. When the proposed taking of property is “for the
 opening, widening, extending or improving roads, streets,
 alleys and sidewalks . . .” such purpose normally would be
 sufficient to state a public use or benefit. Nonetheless, a

 10
 TOWN OF MATTHEWS V. WRIGHT

 Opinion of the Court

 case involving taking of private property cannot be
 considered in a vacuum and without regard to its factual
 history.

 5. [T]he Court is convinced that the eminent domain
 statute and the Constitutions of North Carolina and the
 United States require more than the Plaintiff simply
 reiterating its previous position, without any plans
 whatsoever for construction, improvements or alterations
 to the property being taken.

 6. Based upon the evidence before the Court, the Court
 finds that Plaintiff’s purported taking is an arbitrary and
 capricious exercise by the Plaintiff of its powers of eminent
 domain.

The trial court concluded “[t]he Plaintiff’s claim to the [Wrights’] Property by

Eminent Domain is null and void.” The Town filed timely notice of appeal.

 II. Jurisdiction

 Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27 (2014),

which provides for an appeal of right to the Court of Appeals from any final judgment

of a superior court.

 III. Standard of Review

 Our Supreme Court has held de novo review is appropriate when reviewing

decisions of the trial court on all issues other than damages in eminent domain cases.

See Piedmont Triad Airport Auth. v. Urbine, 354 N.C. 336, 338, 554 S.E.2d 331, 332

(2001). We review eminent domain issues de novo because of the well-settled

principle that de novo review is required where constitutional rights are implicated.

 11
 TOWN OF MATTHEWS V. WRIGHT

 Opinion of the Court

See id. Both the United States and North Carolina Constitutions provide that

citizens shall not be deprived of their property without due process of law. See U.S.

Const. amend XIV, § 1 (“[N]or shall any State deprive any person of life, liberty, or

property, without due process of law[.]”); N.C. Const. art. I, § 19 (“No person shall be

. . . deprived of his . . . property, but by the law of the land.”). Constitutional rights

are necessarily implicated in eminent domain cases because they involve a taking of

private property. Thus, we review the trial court’s judgment in this case de novo.

“Under a de novo review, the court considers the matter anew and freely substitutes

its own judgment for that of the lower tribunal.” State v. Williams, 362 N.C. 628,

632–33, 669 S.E.2d 290, 294 (2008) (citation and quotation marks omitted).

 IV. Analysis

 N.C. Gen. Stat. § 40A-3(b) gives municipalities the power of eminent domain.

The statute allows municipalities to “acquire by purchase, gift, or condemnation any

property” as long as the acquisition is “[f]or the public use or benefit,” and fulfills one

of the statute’s enumerated purposes. N.C. Gen. Stat. § 40A-3(b) (2014). Section (1)

of the statute allows public condemnors to condemn land for the purpose of “[o]pening,

widening, extending, or improving roads, streets, alleys, and sidewalks.” N.C. Gen.

Stat. § 40A-3(b)(1). For the following reasons, we hold that the Town’s condemnation

action against the Wrights should be dismissed as serving no public use or benefit, in

violation of N.C. Gen. Stat. § 40A-3.

 12
 TOWN OF MATTHEWS V. WRIGHT

 Opinion of the Court

 “[T]he determination of whether the condemnor’s intended use of the land is

for ‘the public use or benefit’ is a question of law for the courts.” Carolina Tel. & Tel.

Co. v. McLeod, 321 N.C. 426, 429, 364 S.E.2d 399, 401 (1988). If a municipality’s

condemnation action purports to serve one of the statutorily enumerated purposes for

public condemnation, then the burden shifts to the property owner to refute the

municipality’s showing of a “public use or benefit.” See City of Burlington v. Isley

Place Condominium Ass’n, 105 N.C. App. 713, 714–15, 414 S.E.2d 385, 386 (1992);

see also N.C. Gen. Stat. § 40A-3(b) (2014). Because the Town’s condemnation action

purports to be for the purpose of “opening” Home Place in accordance with section (1)

of the statute, the burden is on the Wrights to show that the condemnation serves no

public use or benefit.

 Our Supreme Court uses two tests to determine whether a condemnation is for

the public use or benefit: “The first approach—the public use test—asks whether the

public has a right to a definite use of the condemned property. The second approach—

the public benefit test—asks whether some benefit accrues to the public as a result of

the desired condemnation.” Id. at 430, 364 S.E.2d at 401 (internal citations omitted).

North Carolina courts have held that a condemnation must satisfy both the “public

use” and the “public benefit” test. See id. at 432, 364 S.E.2d at 402. Under the “public

use” test, the dispositive determination is “whether the general public has a right to

a definite use of the property sought to be condemned.” Id. at 430, 364 S.E.2d at 401.

 13
 TOWN OF MATTHEWS V. WRIGHT

 Opinion of the Court

It is the “public’s right to use, not the public’s actual use” that is the key factor in

making the “public use” determination. Id. Under the “public benefit” test, the

dispositive determination is “whether some benefit accrues to the public as a result

of the desired condemnation.” Id. However, “not just any benefit to the general public

will suffice under this test. Rather, the taking must furnish the public with some

necessity or convenience which cannot readily be furnished without the aid of some

governmental power.” Id. at 432, 364 S.E.2d at 402 (citation and quotation marks

omitted).

 Here, the Wrights have met their burden of showing that no public use or

benefit is achieved from this condemnation of their property. The Wrights have

shown that the condemnation fails the “public benefit” test. We reject the Town’s

consistent characterization that this condemnation will “open” Home Place for public

benefits. The predicate to “opening” Home Place is that it must have previously been

“closed” in some way. We see two ways in which Home Place could have been “closed”:

(1) if the Wrights blocked access to Home Place by placing a barricade on their

property, or (2) if the entire street was public except for the Wrights’ thirty-foot

private portion of the street. The evidence presented here supports neither

circumstance. Instead, the evidence shows that the Wrights have never blocked

access to Home Place. Furthermore, although the Wrights’ portion of Home Place is

private land, with a right of way to the public for ingress and egress, most of the other

 14
 TOWN OF MATTHEWS V. WRIGHT

 Opinion of the Court

landowners’ portions of Home Place have never been dedicated to the Town. It defies

reason that the Town would need to condemn only the Wrights’ portion of Home Place

in order to “open” the street.

 The Town asserts that the condemnation serves the following public benefits:

(1) neighbors’ access to their land, (2) utility service provider access, (3) fire fighters’

access to water, and (4) general community interconnectedness. Condemnation of the

Wrights’ portion of Home Place furthers none of these goals. Rather, condemnation

of the Wrights’ portion of Home Place would only allow for those public benefits on

the Wrights’ portion of Home Place, which is at a dead end and landlocked by other

individuals’ portions of Home Place. Most of the other portions of Home Place have

neither been dedicated to the Town as public land nor condemned by the Town. Thus,

opening the Wrights’ thirty-foot portion of Home Place to the public through

condemnation will have no effect on the present ability of fire fighters or utility

providers to access Home Place as a whole. Similarly, community interconnectedness

is not served by opening a small portion of a larger, dead-end street. Finally,

regardless of the result in this condemnation case, the Wrights’ neighbors will retain

the right to access their properties through the easement in the Wrights’ deed.

Because the Wrights have shown that the condemnation fails the “public benefit” test,

we do not address whether the condemnation satisfies the “public use” test.

 15
 TOWN OF MATTHEWS V. WRIGHT

 Opinion of the Court

 The sequence of events leading up to the condemnation bolsters our conclusion

that no public use or benefit is served by the condemnation. The evidence shows that

the Town was motivated by considerations irrelevant to the public benefit.4 The

evidence shows that Mayor Taylor and some of the Commissioners considered

personal conflicts between the Town and the Wrights in making the decision to

condemn—rather than considering the public use or benefit of the condemnation.

 We need not reach the issue of whether the Town’s decision to condemn was

arbitrary or capricious because the Wrights have met their burden of showing that

the Town’s condemnation action does not serve the public use or benefit. Therefore,

the Town’s condemnation action should be dismissed.

 V. Conclusion

 For the reasons stated above, the judgment of the trial court dismissing the

Town’s condemnation action is affirmed.

 AFFIRMED.

 Judges BRYANT and STROUD concur.

4 In Village of Arlington Heights v. Metropolitan Housing Dev. Corp., the United States Supreme Court
listed four types of evidence that can show an improper motive was employed by a legislative or
administrative decision: “(1) the historical background of the decision; (2) the specific sequence of
events leading up to the challenged decision; (3) departures from the normal procedural sequence; and
(4) the legislative or administrative history . . . especially where there are contemporary statements
by members of the decisionmaking body, minutes of its meetings, or reports.” 429 U.S. 555, 565 (1977).

 16