LINA LEE S. STOUT, Plaintiff v. THE CITY OF DURHAM, Defendant

OAKRIDGE 58 INVESTORS, A NORTH CAROLINA GENERAL PARTNERSHIP, Plaintiff v. THE CITY OF DURHAM, Defendant

No. COA95-13

(Filed 5 March 1996)

**Eminent Domain § 90 (NCI4th)— sewer outfall for benefit of developer—right of others to connect to service—contribution to prosperity of community—no condemnation for private purpose—no right to preliminary injunction**

Plaintiffs did not produce evidence in support of their motion for a preliminary injunction sufficient to forecast a likelihood that they would prevail upon their claim that defendant city's threatened condemnation of their property was for a private purpose, was unconstitutional, and was an unlawful exercise of its power of eminent domain where the city was undertaking the condemnation of the property to construct a sewer outfall pursuant to an agreement with and as an accommodation to a private developer of a shopping center; though the proposed sewer outfall would confer a private benefit upon the developer, other property owners to whom the city owed a duty to provide sewer service would have the right, equal to that of the developer, to connect to the expanded system; and provision of sewer services to a substantial retail shopping center would contribute to the general welfare and prosperity of the community, which benefits from economic growth, and therefore would satisfy the "public benefit" test.

**Am Jur 2d, Eminent Domain § 43.**

Appeal by plaintiffs from order entered 20 October 1994 by Judge Henry V. Barnette, Jr., in Durham County Superior Court. Heard in the Court of Appeals 5 October 1995.

*Randall, Jervis & Hill, by Robert B. Jervis, for plaintiff-appellants.*

*Stubbs, Cole, Breedlove, Prentis & Biggs, by Richard F. Prentis, Jr., and David K. Williams, Jr., for defendant-appellee.*

## STOUT v. CITY OF DURHAM

[121 N.C. App. 716 (1996)]

MARTIN, John C., Judge.

In separately filed, but essentially identical complaints, plaintiffs alleged that defendant City of Durham had given notice of its intent to acquire by condemnation portions of their respective properties for construction of a proposed sewer outfall. Plaintiffs alleged that the condemnation was being undertaken for a private, rather than public, purpose and that they intended to assert the City's lack of authority to condemn their property as a defense to the threatened condemnation action. Plaintiffs sought injunctive relief to restrain the vesting of title and right of possession in the City pursuant to G.S. § 40A-42, until the issue of the City's authority to condemn the property could be decided as provided by G.S. § 40A-47.

The cases were consolidated for hearing and were heard by the trial court upon plaintiffs' motion for a preliminary injunction. The trial court found facts and concluded:

> (1) The plaintiffs have not shown a likelihood of success on the merits of their action and there is not probable cause to believe that plaintiffs will ultimately prevail in this action and establish a private purpose and therefore an unconstitutional basis for this condemnation.

The trial court denied the motion for a preliminary injunction and plaintiffs appealed.

---

The decision to grant or deny a preliminary injunction is ordinarily within the sound discretion of the trial court and the burden is upon the appellant to show error. *Huggins v. Board of Education*, 272 N.C. 33, 157 S.E.2d 703 (1967). Even so, the standard of appellate review of an order granting or denying a preliminary injunction is essentially *de novo*; the appellate court is not bound by the trial court's findings, but may weigh the evidence and find the facts for itself. *A.E.P. Industries v. McClure*, 308 N.C. 393, 302 S.E.2d 754 (1983); *N.C. Electric Membership Corp. v. N.C. Dept. of Econ. & Comm. Dev.*, 108 N.C. App. 711, 425 S.E.2d 440 (1993).

Generally, a preliminary injunction will be issued only where: (1) the plaintiff is able to show a likelihood of success on the merits of the case and (2) the plaintiff is likely to sustain irreparable harm, or, in the opinion of the court, the injunction is necessary to protect the plaintiff's rights during the course of litigation. *A.E.P. Industries*, 308 N.C. at 401, 302 S.E.2d at 759-60. Thus, the initial question must be

whether plaintiffs are able to show a likelihood of success on the merits. *Id.*

Plaintiffs alleged, and offered evidence tending to show, that the City of Durham was undertaking the condemnation of their property and the construction of the sewer easement, pursuant to an agreement with, and as an accommodation to, Homart Development Corporation, a private developer of a shopping center known as "New Hope Commons" containing approximately twenty stores. Thus, plaintiffs contend, they have demonstrated a likelihood of success on the merits of their claim that the City was acting beyond its authority by attempting to exercise its power of eminent domain for a private, rather than public, purpose. We disagree.

Clearly, the power of eminent domain may not be used to take one's private property for the purely private purpose of another. *Carolina Telephone and Telegraph Co. v. McLeod*, 321 N.C. 426, 364 S.E.2d 399 (1988). The General Assembly has granted the power of eminent domain to municipalities "[f]or the public use or benefit", G.S. § 40A-3(b), including the operation and extension of a sewerage system. N.C. Gen. Stat. §§ 160A-311(3), 160A-312(a) (1994). Whether a condemnor's intended use of property is for "the public use or benefit" is a question of law for the courts; the concept is flexible and adaptable to changes in society and governmental duty. *Carolina Telephone and Telegraph Co.*, 321 N.C. 426, 364 S.E.2d 399.

In *Carolina Telephone and Telegraph Co.*, the Supreme Court sanctioned the use of two methods of analysis to determine whether a condemnor's intended use is for "the public use or benefit": The "public use" test and the "public benefit" test. Under the "public use" analysis, the question is whether the public has a definite use of the condemned property; "it is the public's *right* to use, not the public's actual use, which is important to this first approach." *Id.* at 430, 364 S.E.2d at 401 (emphasis in original). Under the "public benefit" test, the question is whether the condemnation results in some benefit, i.e., contribution to the general welfare and prosperity, accruing to the general public. *Id.* at 432, 364 S.E.2d at 402. "[T]he taking must 'furnish the public with some necessity or convenience which cannot readily be furnished without the aid of some governmental power, and which is required by the public as such.' " *Id.*, (quoting *Charlotte v. Heath*, 226 N.C. 750, 755, 40 S.E.2d 600, 604 (1946)).

From the evidence before the trial court at the preliminary injunction hearing, it appears to us that the purpose for which the City of

Durham intends to acquire plaintiffs' property satisfies both tests. While the proposed sewer outfall will undeniably enable Homart to develop its shopping center and, to that extent, confer a private benefit upon Homart, it is equally undeniable that other property owners, to whom the City owes a duty to provide sewer service, will have the right, equal to that of Homart, to connect to the expanded system. Thus, the intended use of the condemned property satisfies the "public use" test.

Moreover, we recognize that the provision of expanded sanitary sewer services is essential to growth and economic development, which is beneficial to the community and its citizens, and that such services are necessities which cannot generally be provided without governmental assistance. It follows that provision of sewer services to a substantial retail shopping center would contribute to the general welfare and prosperity of the community, which benefits from economic growth and, therefore, satisfies the "public benefit" test.

Finally, where, as here, the taking benefits both public and private interests, we may consider which of those interests is paramount.

> "[T]he exercise of eminent domain for a public purpose which is primary and paramount will not be defeated by the fact that incidentally a private use or benefit will result which will not of itself warrant the exercise of a power. . . . The controlling question is whether the paramount reason for the taking of land to which objection is made is the public interest, to which benefits to private interests are merely incidental, or whether, on the other hand, the private interests are paramount and controlling and the public interests merely incidental."

*Id.* at 433, 364 S.E.2d at 403, (quoting *Highway Comm. v. School*, 276 N.C. 556, 562-63, 173 S.E.2d 909, 914 (1970)). Though Homart's development may have hastened the need for expanded sewer services in the vicinity, the paramount public interest served by construction of the outfall is the continued residential and commercial growth which it enables. This public interest, rather than the private interest of Homart, warrants the City's exercise of its power of eminent domain. Thus, we agree with the trial court and find that plaintiffs have not produced evidence in support of their motion for a preliminary injunction sufficient to forecast a likelihood that they will prevail upon their claim that the City's threatened condemnation of their property is for a private purpose, is unconstitutional, and an unlawful

exercise of its power of eminent domain. Because we find that plaintiffs have not shown a likelihood of success on the merits, we need not inquire into whether they are likely to sustain irreparable loss or whether issuance of a preliminary injunction is necessary for the protection of their rights pending resolution of the litigation concerning the City's authority to acquire their property by condemnation. The trial court's order denying plaintiffs' motion for a preliminary injunction will be affirmed.

Plaintiffs also argue that the trial court, in finding that the City's condemnation was for a public purpose, went beyond the scope of the hearing on the motion for a preliminary injunction and "constituted a ruling on the merits" of their claim. Their argument is without merit. Neither the findings of the trial court in passing upon the issue of whether to grant a preliminary injunction, nor the decision of this Court upon appeal of the order denying the injunction, determine any right of the parties other than plaintiffs' entitlement to a preliminary injunction; these rulings are not proper matters for consideration of the trial court in passing upon any defense which plaintiffs may assert in the City's condemnation action. *Huggins*, 272 N.C. 33, 157 S.E.2d 703.

Affirmed.

Judges JOHN and McGEE concur.