CASWELL COUNTY, Plaintiff v. TOWN OF YANCEYVILLE, CITY OF ROXBORO, and PERSON COUNTY, Defendants

No. COA04-472

(Filed 3 May 2005)

**1. Cities and Towns— taking by town in county—no consent from county—regional water system**

Condemnation of property by defendant Town of Yanceyville in Caswell County for a regional water system without the consent of Caswell County was not invalidated by N.C.G.S. § 153A-15, which applies when a local government unit attempts to acquire land in another county. Yanceyville is within Caswell County, and summary judgment was correctly granted for defendants. Any claim that Yanceyville is merely undertaking the condemnation on behalf of other counties or towns outside Caswell County is obviated by the real and substantial benefits accruing to Yanceyville.

**2. Cities and Towns— regional water system—property condemned by town within county—no leaseholder interest by town in different county**

The Town of Roxboro did not acquire a leasehold in real property located in Caswell County in violation of N.C.G.S. § 153A-15 through the condemnation of land for a regional water system by Yanceyville, a town within Caswell County. The parties have mutually and cooperatively utilized the subject property, and Yanceyville has not surrendered to Roxboro the occupation and profits of the land.

**3. Public Works— interlocal water agreement—formalities for water system not skirted**

The defendants did not use an interlocal water agreement and the pertaining statutory provisions to skirt the formalities

required for the creation of a water authority under N.C.G.S. Chapter 162A. The provisions on which plaintiff relies are permissive, and nothing in Chapter 162A indicates that it was designed to restrict the broad grant of authority to local government units for interlocal cooperation.

Appeal by plaintiff from order entered 11 December 2003 by Judge Ripley E. Rand in Caswell County Superior Court. Heard in the Court of Appeals 1 December 2004.

*Caswell County Attorney Robert V. Shaver, Jr., for plaintiff-appellant.*

*Brough Law Firm, by G. Nicholas Herman, Ramsey, Ramsey & Long, by James A. Long, and R. Lee Farmer, for defendant-appellees.*

CALABRIA, Judge.

Caswell County appeals the trial court's entry of summary judgment in favor of the Town of Yanceyville ("Yanceyville"), the City of Roxboro ("Roxboro"), and Person County (collectively, "defendants") on issues involving defendants' proposed water supply and distribution facility to draw water from a portion of the Dan River that runs from Virginia through Caswell County. We affirm.

Caswell and Person Counties are adjoining counties. Yanceyville, a municipal corporation located in Caswell County, owns and operates a public enterprise water supply distribution system currently capable of treating approximately 1.0 million gallons per day ("MGD"). Yanceyville currently supplies water to its citizens from Farmer Lake, which is located within Caswell County, pursuant to an agreement with Caswell County. Yanceyville's current water need is 0.4 MGD, and its projected water need in twenty years is 1.0 MGD. Farmer Lake has the capacity to supply approximately 6.3 MGD of water.

Roxboro, a municipal corporation located in Person County, also owns and operates a public enterprise water supply distribution system. Person County does not operate a public enterprise water supply distribution system but has an agreement with Roxboro for future extension of Roxboro's system to provide water to residents located within Person County but outside of Roxboro's boundaries. Roxboro currently supplies water to its citizens from Lake Isaac Walton and

Lake Roxboro, having respective capacities for water supply of 3.2 MGD and 7.8 MGD. Current peak demand of usage for Roxboro is 3.7 MGD of water, and the latest water study by Roxboro and Person County indicated the current supply would be sufficient for projected needs for twenty years.

In September of 2001, Dominion Energy ("Dominion"), a Virginia-based power company, expressed an interest in constructing a natural gas fired electrical generation plant in Person County. To service the proposed plant, Dominion required peak raw water supplies in the amount 8.0 MGD. As a result of this need, Roxboro and Person County began investigating alternative sources of water to ensure supply for future growth. Ultimately, Roxboro and Person County identified the Dan River, which flows out of Virginia and through Caswell County, as the most viable alternative source of water. On 1 March 2002, Roxboro submitted an application to request reclassification of the Dan River to allow it to be used as a drinking water supply source as well as an application for a permit to withdraw water from the Dan River at a proposed intake facility to be located along the Dan River in Caswell County. Although Dominion withdrew its plans regarding the construction of an electrical plant in Person County in February of 2003, Roxboro and Person County elected to proceed with the applications based on the expenditure of approximately $500,000.00 on the project at that time.

At all times relevant to the issues on appeal, Caswell County opposed the applications regarding the Dan River; nonetheless, on 25 March 2003, defendants executed an interlocal agreement (the "agreement") to establish a public enterprise water supply distribution system. The stated purpose of the agreement was "to establish a ... regional and inter-governmental approach for supplying raw water services to Yanceyville, Roxboro, Person County, and other areas of Caswell County" by utilizing the water supply capacity of the Dan River. The planned interconnected and regional water supply and distribution system (the "supply system") was intended to

> (1) serve the current and long-term water supply needs of Yanceyville, other areas of Caswell County, and Roxboro and Person County; (2) accommodate industrial, commercial, and residential development within the jurisdiction of those units of local government; (3) provide Yanceyville with the revenue to operate, maintain, and repair a water supply system for the benefit of users in Caswell County; and (4) be financed by Yanceyville, Roxboro, and Person County.

The supply system consists of five segments. Segment 1 consists of a raw water intake, a raw water pump station, a pretreatment facility, and a meter vault with water line connection points (the "Point of Connection"). Segment 2 consists of a raw water line in Caswell County extending from the Point of Connection to the Caswell County-Person County line and traversing existing easements. Segment 3 consists of a raw water line in Person County extending from Segment 2 at the Caswell County-Person County line to Roxboro's water facility at Lake Isaac Walton and traversing existing easements. Segment 4 consists of a raw water line in Caswell County from the Point of Connection to Yanceyville's water treatment plant. Segment 5 consists of a water treatment unit and high service pump station at the raw water intake site and a finish water line from the water treatment unit to the water distribution system located in the Town of Milton.

The agreement details the parties' responsibilities with respect to each segment. Regarding construction, maintenance, associated costs, and other costs for regulatory approvals, Roxboro is responsible for segments 1, 2, and 3, and Yanceyville is responsible for segments 4 and 5. With respect to holding title to the physical improvements to the real property, Roxboro and Person County hold title to segments 1, 2, and 3, and Yanceyville holds title to segments 4 and 5. As to the real property on which the physical improvements are located for segments 1, 2, 4, and 5, title is held by Yanceyville alone; however, the agreements provides that

> [i]f, at any time during the [forty-year, renewable] term of this Agreement, it becomes lawful under G.S. 153-15A or other law for Roxboro to hold title to the Raw Water Intake Site and the real property or interests in real property by way of easements or right-of-ways necessary for the Segment 1 and Segment 2 facilities, title to the Raw Water Intake Site will be held in the joint names of Yanceyville and Roxboro, and title to the real property or interests in real property necessary for the Segment 2 facilities will be held in the sole name of Roxboro . . . [without] any monetary or other consideration for such transfers of title.

Title to the real property upon which segment 3 is located is held jointly by Roxboro and Person County.

Other pertinent provisions in the agreement include (1) how the water drawn from the Dan River is allocated between Roxboro and Yanceyville, (2) that Roxboro pay three cents to Yanceyville for each 1,000 gallons of raw water Roxboro draws from the Dan River

through the Point of Connection, (3) provisions for liquidated damages in favor of Roxboro and Person County in the event of breach by Yanceyville, (4) the parties' respective responsibilities for acquiring the necessary real property for the five segments, and (5) Yanceyville's right to draw water, at operating cost, from Lake Isaac Walton via segments 2 and 3 during times of need when the Dan River cannot supply the necessary water, provided that Roxboro has sufficient water capacity to supply such volume.

Pursuant to the agreement, Yanceyville instituted a condemnation action against a Caswell County property owner to take land on which the proposed water intake facility would be located. Plaintiff subsequently filed a declaratory judgment action requesting the trial court determine the applicability of N.C. Gen. Stat. § 153A-15 to the condemnation action. Both plaintiff and defendants moved for summary judgment, and on 11 December 2003, the trial court entered summary judgment in favor of defendants after hearing arguments and concluding "that the provisions of N.C. Gen. Stat. § 153A-15 do not invalidate the condemnation action initiated by Yanceyville or otherwise prevent the proposed use of the land pursuant to the 'Interlocal Agreement' presented . . . ." Plaintiff appeals, asserting the trial court "erred by granting summary judgment to defendants and denying summary judgment to plaintiff when defendants failed to obtain the consent of the Caswell County Board of Commissioners pursuant to N.C. Gen. Stat. § 153A-15 before acquiring real property in Caswell County."

"[S]ummary judgment is an appropriate procedure in an action . . . for a declaratory judgment." *Tucker v. City of Kannapolis*, 159 N.C. App. 174, 178, 582 S.E.2d 697, 699 (2003). Our appellate review examines the whole record to determine "(1) whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact; and (2) whether the moving party was entitled to judgment as a matter of law." *Id.* In the instant case, the facts are undisputed; therefore, the only question is whether the trial court properly entered summary judgment in favor of defendants.

**[1]** North Carolina General Statues § 160A-240.1 (2003) authorizes a city to acquire an interest in real property for use by the city through the exercise of eminent domain procedures as provided in Chapter 40A of the General Statutes. Under N.C. Gen. Stat. § 40A-3(b)(2) (2003), the governing body of a city is granted the power of eminent domain, for the public use or benefit, to acquire property, "either

inside or outside its boundaries," for the purpose of "[e]stablishing, extending, enlarging, or improving" public enterprises listed in N.C. Gen. Stat. § 160A-311. North Carolina General Statutes § 160A-311 (2003) expressly includes water supply and distributions systems within the term "public enterprise." Authority is expressly granted to a city to operate a public enterprise "outside its corporate limits, within reasonable limitations . . . ." N.C. Gen. Stat. § 160A-312(a) (2003). In addition, this Court has noted that the "broad language . . . in G.S. § 160A-312 . . . evidence[s] [the Legislature's] intent to give cities . . . comprehensive authority to own and operate public enterprises outside their boundaries . . . [and] grant[s] a city the absolute authority, without limitation or restriction, to establish and conduct a public enterprise for itself and its citizens." *Davidson County v. City of High Point*, 85 N.C. App. 26, 41, 354 S.E.2d 280, 288 (1987). Nonetheless, Caswell County contends Yanceyville's condemnation action cannot be sustained due to operation of N.C. Gen. Stat. § 153A-15 (2003). We disagree.

North Carolina General Statutes § 153A-15(b) provides, in pertinent part, as follows:

Notwithstanding the provisions of [N.C. Gen. Stat. § 160A-240.1], or any other general law or local act conferring the power to acquire real property, before any . . . city . . . which is located wholly or primarily outside another county acquires any real property located in the other county by exchange, purchase or lease, it must have the approval of the county board of commissioners of the county where the land is located.

This statute operates when a unit of local government located in one county attempts to acquire land located in another county. *See, e.g., County of Johnston v. City of Wilson*, 136 N.C. App. 775, 525 S.E.2d 826 (2000). In such cases, the unit of local government undertaking to acquire the realty is required to first obtain approval from the board of commissioners of that county where the land is located. N.C. Gen. Stat. § 153A-15(b). However, in the instant case, both Yanceyville and the land being condemned are located within Caswell County. Accordingly, Yanceyville's condemnation action does not implicate this statutory provision.

Caswell County alternatively contends Yanceyville is condemning the property on behalf of Roxboro and Person County and is merely a token title-holder allowing Roxboro and Person County to obtain an interest in real property located in Caswell County without the necessary consent. Given the numerous and material benefits afforded

Yanceyville under the terms of the agreement, we must disagree. First, Yanceyville's sole source of water currently is Farmer Lake. Thus, the addition of another independent source of water is beneficial should conditions cause Farmer Lake to become unusable. Second, Yanceyville is acquiring an additional water treatment unit and pump station to utilize the new water source in addition to their current facilities. Third, the Dan River is less susceptible to local drought conditions than Farmer Lake. Fourth, the additional source of water allows for greater future growth and expansion even in the absence of an immediate need. Finally, the interconnected system allows Yanceyville to obtain water from Lake Isaac Walton should the need arise in the future paying only the cost of operating Roxboro's intake facility provided Roxboro has sufficient capacity. These real and substantial benefits accrue to Yanceyville and obviate any claim that this is an unwanted taking by another government or that Yanceyville is merely undertaking the condemnation action solely on behalf of and in favor of granting Roxboro or Person County an interest in Caswell County property.

[2] Caswell County separately argues Roxboro, through the agreement, has acquired a leasehold interest in real property located in Caswell County in violation of N.C. Gen. Stat. § 153A-15. "A lease for a term of years is a contract, by which one agrees, for a valuable consideration, to let another have the occupation and profits of land for a definite time." *Helicopter Corp. v. Realty Co.*, 263 N.C. 139, 143, 139 S.E.2d 362, 366 (1964). In the instant case, however, the parties have mutually and cooperatively utilized the subject property. Yanceyville has not surrendered to Roxboro "the occupation and profits of the land" under the agreement. To the contrary, Yanceyville has paid for and owns the land, and Roxboro has paid for and owns the facilities for the purpose of harvesting water for the benefit of both from the Dan River. Moreover, Caswell County's reliance on the provision within the agreement requiring Roxboro to pay three cents for every 1,000 gallons of water it draws from the Dan River is misplaced. This payment does not constitute rent; rather, the payment to Yanceyville is, by the agreement's express terms, to purchase water for Roxboro which will "provide Yanceyville with revenue to operate, maintain, and repair" their portion of the interconnected water supply system. We are not persuaded that the instant agreement represents a lease.

[3] Next, Caswell County asserts defendants used the interlocal agreement and the pertaining statutory provisions in an effort to "skirt the formalities required for creation of a water authority under

G.S. § 162A while making their endeavor sound similar in scope." We disagree. First, the provisions on which Caswell County relies are permissive in nature. *See, e.g.,* N.C. Gen. Stat. §§ 162A-3 to 162A-4; 162A-5.1 (2003). Second, nothing in Chapter 162A indicates it was designed to restrict the broad grant of authority to local governmental units for interlocal cooperation. *See* N.C. Gen. Stat. § 160A-461 (2003) (permitting "[a]ny unit of local government in this State and any one or more other units of local government in this State or any other state (to the extent permitted by the laws of the other state) [to] enter into contracts or agreements with each other *in order to execute any undertaking*") (emphasis added).

In summary, neither N.C. Gen. Stat. § 153A-15 nor Chapter 162A of the North Carolina General Statutes prohibits the interlocal agreement between defendants under the facts of the instant case. We have carefully considered plaintiff's remaining arguments and find them to be without merit.

Affirmed.

Judges HUNTER and LEVINSON concur.